IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SHAHRIAR BEHNAMIAN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   Civil Case No. 1:21-cv-1043 (RDA/IDD) |
| | ) |
| ANDREW HIRSHFELD, *in his official capacity* | ) |
| *Performing the Functions and Duties of the* | ) |
| *Under Secretary of Commerce for Intellectual* | ) |
| *Property and Director of the United States Patent* | ) |
| *and Trademark Office, et al.*, | ) |
| | ) |
|     Defendants. | ) |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on Defendants Andrew Hirshfeld and the United States Patent and Trademark Office's ("Defendants") Motion to Dismiss (Dkt. 11) and Motion for Summary Judgment (Dkt. 12).  The Court dispenses with oral argument as it would not aid in the decisional process.  *See* Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J).  The Motions are now fully briefed and ripe for disposition.  Considering the Motions together with Defendants' response to Plaintiff Shahriar Behnamian's ("Plaintiff") petition for review ("Petition") pursuant to 35 U.S.C. 32 (Dkt. 10); Defendants' memorandum in support of the Motions (Dkt. 13); Plaintiff's oppositions (Dkt. Nos. 15; 16); Defendants' reply in further support of the Motions (Dkt. 17), and Plaintiff's supplemental opposition to Defendants' response to Plaintiff's Petition (Dkt. 18), it is hereby ORDERED that Defendants' Motion to Dismiss and Motion for Summary Judgment are GRANTED and Plaintiff's Petition is DISMISSED for the reasons that follow.

I.  BACKGROUND

For purposes of considering the Motion to Dismiss, the Court accepts all facts contained within Plaintiff's Complaint as true, as it must at the motion-to-dismiss stage.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiff filed this matter in a *pro se* capacity on September 10, 2021, alleging three counts styled as: (1) a petition for review of wrongful denial of an application for registration to practice before the United States Patent and Trademark Office ("USPTO" or "Agency") pursuant to 35 U.S.C. § 32 and Local Rule 83.5;[1] (2) unlawful retaliation under Title VII of the Civil Rights Act of 1964; and (3) constructive retaliatory discharge under Title VII.  *See generally* Dkt. 1.  Plaintiff seeks, *inter alia*, compensatory damages, injunctive relief, and punitive damages.

Plaintiff worked at the USPTO as a Patent Examiner beginning on January 21, 2009, reached the GS-14 level as a Primary Patent Examiner in 2014, and resigned from the Agency on May 21, 2020.  Dkt. 1 ¶ 40.  From the summer of 2017 until the Fall of 2019, Plaintiff was enrolled in the Patent Hoteling Program ("PHP"), which allowed him to work remotely from Hawaii on a full-time basis so long as Plaintiff reported to the USPTO's headquarters in Alexandria, Virginia one hour biweekly.  *Id.* ¶ 41.  However, Agency policy permitted PHP participants to avoid the one-hour requirement by taking holiday or sick leave, provided it was not used on a consistent basis.  *Id.*

In the spring of 2019, Plaintiff expected the birth of his second child in early April, and communicated this to his then-supervisor, Charles Appiah.  In the weeks prior, Plaintiff petitioned for leave from the biweekly hour requirement to allow him to remain in Hawaii "until at least the

---

[1]  Plaintiff's Complaint properly includes a certification pursuant to Local Rule 83.1(M). Dkt. 1 at 61.

birth of his second child." *Id.* ¶ 44.  Mr. Appiah allegedly denied the work-leave request and instead "demand[ed]" that Plaintiff travel over the weekend back to USPTO headquarters ahead of his second child's impending birth. *Id.* ¶¶ 45, 148.  Following the denial, on March 29, 2019, Plaintiff allegedly contacted four TC 2600 Directors in his Agency division for assistance.  One of the TC 2600 Directors, Diego Gutierrez, allegedly granted the work-leave request, directing Plaintiff to speak with Mr. Appiah further in the coming weeks. *Id.* ¶ 46.  On April 23, 2019, Plaintiff's second child was born. *Id.* ¶ 47.

According to Plaintiff, Mr. Appiah "increased his retaliation efforts by reducing his contact with the Plaintiff and scrutinizing the Plaintiff's work more often." *Id.* ¶ 48.  Mr. Appiah also allegedly removed Plaintiff's access to the Record Sharing Platform ("RSP")—an integral component of Plaintiff's ability to track his time working. *Id.*  Plaintiff avers that the Agency then determined Plaintiff had accumulated hours absent without leave ("AWOL") six days after Plaintiff's second child was born. *Id.* ¶ 50.  Defendants continued to allege "partial AWOL" against Plaintiff until June 5, 2019.[2] *Id.*  Plaintiff generally avers that his supervisor "demand[ed]" he report to Alexandria, Virginia "more often." *Id.* ¶ 147.  On October 8, 2019, Mr. Appiah allegedly charged Plaintiff with AWOL. *Id.* ¶ 51.  By February 27, 2020, Plaintiff received a 5-day suspension beginning on March 9, 2020, which, due to Plaintiff's trouble accessing his work computer, he alleges effectively made his suspension 7 days.[3]

---

[2] An examination of the Administrative Record reveals that Plaintiff's supervisor reviewed the timekeeping records between April 28, 2019 and June 8, 2019 and proposed a 14-day suspension upon finding that Petitioner was AWOL for a total of 30 hours and 15 minutes. *See* Dkt. 8-2 at 18.

[3] Plaintiff's director reduced the recommended 14-day suspension to five days.  Plaintiff did not appeal that decision.  Dkt. 7-3 at 19.

During the week of May 11, 2020, Plaintiff submitted his two-week notice of departure and conducted an exit interview with Mr. William R. Perry III.  Mr. Perry allegedly informed Plaintiff of his right to submit an application to practice before the USPTO and seek a waiver of examination, provided that he signed the application on his last day of employment at the Agency. *Id.* ¶ 55.  In completing his application, Plaintiff answered "No" to each background information question, including Question 17: "Have you ever been disciplined, reprimanded, or suspended in any job for conduct involving dishonesty, fraud, misrepresentation, deceit, or for any violation of Federal or State laws or regulations."  *Id.* ¶ 57.  On May 18, 2020, Plaintiff submitted his Application for Registration to Practice before the USPTO ("Application")—three days prior to his resignation date—but post-dated for May 21, 2020, his last day of work.  *Id.* ¶ 18; Dkt. 7-1 at 4.

On June 10, 2020, Plaintiff received a letter from the USPTO's Office of Enrollment and Discipline ("OED") stating that his Application had been approved, including his request for a waiver from examination.  Dkt. 1 ¶¶ 19, 58.  But on July 1, 2020, the OED allegedly requested additional information from Plaintiff related to his suspension and followed up again for clarification.  *Id.* ¶¶ 59-60.  And on November 13, 2020, when the OED requested Plaintiff show cause as to why his application should not be denied because he failed to demonstrate that he "presently possesses good moral character," Plaintiff allegedly provided a fulsome response weeks later with four letters of recommendation.  *Id.* ¶ 61.  The OED Director issued a Final Decision and Memorandum Opinion denying the Application on January 15, 2021.  *Id.* ¶ 62.  The decision identified a number of reasons for the denial: (1) Plaintiff demonstrated a "lack of candor and truthfulness" by "cho[osing] not to disclose his suspension" which reflected "serious causes for concern regarding his present moral character"; (2) Plaintiff's conduct in reporting his time

4

involved dishonesty when he claimed the benefit of hours not worked; and (3) despite Plaintiff's disagreement with the characterization of his conduct, he nonetheless exhibited an "ongoing lack of acceptance of responsibility for any of his actions" which did not comply with the "exhortation to candor prefacing the Background Information section of the Application." *See* Dkt. 8-3 at 137, 139.

Plaintiff appealed the decision to the USPTO Director on February 13, 2021, arguing chiefly that the OED had "ignored the facts and reasoning provided by Plaintiff and decided to deny the Plaintiff's Application based on shaky grounds." Dkt. 1 ¶ 38. USPTO denied the Application in a Final Order on August 9, 2021 because Plaintiff's suspension was "uncontroverted" and "the inaccurate reporting of time and attendance constitutes misrepresentation." *Id.* ¶ 18; Dkt. 7-3 at 70. Furthermore, the USPTO Director concluded that Plaintiff's "work history, academic success, and letters of recommendation . . . had little probative value" especially because none of Plaintiff's recommenders acknowledged Plaintiff's suspension or his AWOL "and did not indicate any change" in Plaintiff's attitude. Dkt. 7-3 at 71. On September 7, 2021, Plaintiff contacted the Equal Employment Opportunity Commission ("EEOC") and a counselor interviewed Plaintiff the following day. Dkt. 19-1 at 19, 21.

On September 10, 2021, Plaintiff filed his Complaint. Dkt. 1. Pursuant to Local Civil Rule 83.5, on November 9, 2021, Defendants filed a response singularly addressing Plaintiff's first count seeking review of the USPTO's denial of Plaintiff's application to practice as well as a copy of the certified Administrative Record. Dkt. Nos. 7-10. The Court, in its discretion, did not require briefing on the petition for review. E.D. Va. Loc. Civ. R. 83.5. Defendants then filed a motion to dismiss and a motion for summary judgment with a Roseboro notice on November 9, 2021, paired with a single supporting memorandum. Dkt. Nos. 11; 12; 13. Plaintiff responded with an

opposition on November 30, 2021, and appeared to file the same brief again under a separate heading. Dkt. Nos. 15; 16. Defendants filed their reply on December 6, 2021. Dkt. 17. Plaintiff then filed a sur-reply to Defendants' reply on December 13, 2021 in accordance with Local Civil Rule 7(K)(4). Dkt. 18.

## II.  STANDARD OF REVIEW

### A.  Rule 12(b)(6) Standard

A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011). "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]'" and dismissal of the motion is appropriate only if the well-pleaded facts in the complaint "state a claim that is plausible on its face.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555, 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

At the motion-to-dismiss stage, a plaintiff need only "allege facts sufficient to state all the elements of her claim," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), and "the district court must 'accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff].'" *Dao v. Faustin*, 402 F. Supp. 3d 308, 315 (E.D. Va. 2019) (quoting *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015)). Still, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most

6

favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."). And "[g]enerally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing *Goldfarb*, 791 F.3d at 508).

Mindful that Plaintiff is proceeding *pro se*, this Court liberally construes his filings. *Jackson v. Lightsey*, 775 F.3d 170, 177 (4th Cir. 2014). That a *pro se* complaint should be liberally construed neither excuses a *pro se* plaintiff of his obligation to "clear the modest hurdle of stating a plausible claim" nor transforms the court into his advocate. *Green v. Sessions*, No. 1:17–cv– 01365, 2018 WL 2025299, at *8 (E.D. Va.), *aff'd*, 744 F. App'x 802 (4th Cir. 2018).

## B. Rule 56 Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is appropriate only if the record shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 615 (E.D. Va. 2014) (quoting Fed. R. Civ. P. 56(a)). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Hantz*, 11 F. Supp. 3d at 615-16 (quoting *Spriggs v. Diamond Auto. Glass*, 242 F.3d 179, 183 (4th Cir. 2001)). The moving party bears the "initial burden to show the absence of a material fact." *Sutherland v. SOS Intern., Ltd.*, 541 F. Supp. 2d 787, 789 (E.D. Va. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

On summary judgment, a court reviews the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 570 (4th Cir. 2015) (quoting *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)); *McMahan v. Adept Process Servs., Inc.*, 786 F. Supp. 2d 1128, 1134-35 (E.D. Va. 2011) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)). This is a "fundamental principle" that guides a court as it determines whether a genuine dispute of material fact within the meaning of Rule 56 exists. *Jacobs*, 780 F.3d at 570. "[A]t the summary judgment stage[,] the [Court's] function is not [it]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

A factual dispute alone is not enough to preclude summary judgment. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. A "material fact" is one that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). The substantive law determines whether a fact is considered "material," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material fact" arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 248.

## C. 35 U.S.C. § 32 Standard

Congress delegated to the USPTO "'broad authority' to set procedural and ethical rules for those who practice before it, and Congress's grant of gapfilling authority necessitates that courts defer to the [USPTO's] choices where reasonable and not contrary to law." *Piccone v. United*

8

*States Patent and Trademark Office*, No. 1:18-cv-307, 2018 WL 5929631, at *3 (E.D. Va. Nov. 13, 2018) (citing *Lacavera v. Dudas*, 441 F.3d 1380, 1383 (Fed. Cir. 2006)).  This Court retains exclusive jurisdiction to review decisions by the USPTO Director related to the denial of an applicant to practice before the USPTO.  *See* 35 U.S.C. § 32; *Franchi v. Manbeck*, 972 F.2d 1283, 1287-88 (Fed. Cir. 1992).  The judicial review provisions of the Administrative Procedure Act govern this Court's review of a USPTO Director's decision.  *Chaganti v. Lee*, 187 F. Supp. 3d 682, 690 (E.D. Va. 2016) (citing *Bender v. Dudas*, 490 F.3d 1361, 1365 (Fed. Cir. 2007)).

As the APA requires, this Court must therefore conduct a "highly deferential" review of the USPTO decision "with a presumption in favor of finding the agency action valid." *Chaganti*, 187 F. Supp. 3d at 690 (quoting *Ohio Valley Envtl. Coal v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009)).  The petitioner must show that the USPTO's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," in order for this Court to overrule the Agency Director's decision.  *Bender*, 490 F.3d at 1365-66 (quoting 5 U.S.C. § 706).  If the USPTO "has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Cornish v. Dudas*, 715 F. Supp. 2d 56, 63 (D.D.C. 2010); *see also Manufactured Hous. Inst. v. EPA*, 467 F.3d 391, 398 (4th Cir. 2006) (explaining that a court's role is "to determine whether the record reveals that a rational basis exists for [the] decision").

## III.  ANALYSIS

### A.  Defective Service of Process

Defendants argue that Plaintiff has not properly served the Complaint and Summons pursuant to Federal Rule of Civil Procedure 4(c) and should therefore merit dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(5).  Plaintiff counters by stating that

the Clerk of this Court "advised [him] that [he] had properly served the Defendants and the U.S.

Attorney."  Dkt. 15 at 38.  To further entrench his position, Plaintiff cites *Davidson v. Weltman,*

*Weinberg & Reis*, 285 F. Supp. 2d 1093 (S.D. Ohio 2003) to argue that excusal of any defective

service upon error of the court.

A plaintiff must effect service upon any defendant in full satisfaction of the Federal Rules

of Civil Procedure.  *See Danik v. Hous. Auth. of Balt. City*, 396 F. App'x 15, 16 (4th Cir. 2010).

Federal Rule of Civil Procedure 4(c) provides that a summons must be served with a copy of the

complaint and that such service must be made by "[a]ny person who is at least 18 years old and

not a party" in the matter.  Fed. R. Civ. P. 4(c).  Relatedly, Federal Rule of Civil Procedure 4(m)

requires that the summons and complaint be served within 90 days of the filing of the complaint.

Courts in this circuit have found improper service when a plaintiff personally served the summons

and complaint on a defendant.  *See, e.g.*, *Filloramo v. United Event Serv.*, No. 3:13-cv-348, 2015

WL 2381047, at *2 (W.D.N.C. Mar. 26, 2015), *report & recommendation adopted*, 2015 WL

24000808 (W.D.N.C.) (dismissing *pro se* litigant's complaint without prejudice); *Pitts v. O'Geary*,

No. 5:13-cv-116, 2014 WL 229350, at *4 (E.D.N.C. 2014) (same).  However, upon a showing of

good cause or excusable neglect, the Fourth Circuit permits courts to extend the 90-day time to

serve the defendant with a summons after the filing of the complaint.  *See, e.g.*, *Hansan v. Fairfax*

*Cty. Sch. Bd.*, 405 F. App'x 793, 793-94 (4th Cir. 2010) (per curiam); *Mendez v. Elliot*, 45 F.3d

75, 78-79 (4th Cir. 1995); Fed. R. Civ. P. 6(1)(B).

To "challenge[] the mode of delivery or the lack of delivery of the summons and

complaint," a defendant may seek dismissal pursuant to Rule 12(b)(5).  *Davis v. Jobs & Adverts*

*Online, GMBH*, 94 F. Supp. 2d 719, 721 n.5 (E.D. Va. 2000).  The burden then shifts to the plaintiff

to establish the validity of the manner of service and process.  *Sanyal v. Toyota Motor Corp.*, No.

1:14-cv-906, 2014 WL 4925842, at *1 (E.D. Va. Sept. 30, 2014); *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006). Despite the "liberal construction" afforded to evaluating service of process, *Armco Inc. v. Penrod-Sauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984), "*pro se* litigants are expected to comply with time requirements and other procedural rules." *Chien v. Grogan*, 2017 WL 1091504, at *2 (E.D. Va. Mar. 23, 2017).

This Court first recognizes that Plaintiff personally served the Complaint and Summons upon Defendants. *See* Dkt. 5. Moreover, Plaintiff does not dispute that he personally served these documents upon Defendants. However, Plaintiff represents that the Clerk advised him that his manner of service was proper. Even if such was the case, Plaintiff clearly failed to consult the applicable rules. And despite Defendants raising this issue, Plaintiff still did not take the opportunity to serve Defendants properly. This Court sees no good cause or excusable neglect in Plaintiff's failure to properly serve Defendants; the Complaint merits dismissal without prejudice on this ground alone. Notwithstanding this Court's finding of improper service of process, this Court turns to the substance of Defendants' Motions and Plaintiff's Petition.

### B. Defendants' Motion to Dismiss and Motion for Summary Judgment

"Normally, a court must convert a motion to dismiss into a motion for summary judgment if it considers documents outside the pleadings in making a ruling." *Arnold v. Capital One Servs., Inc.*, No. 3:10-cv-244, 2011 WL 864332, at *2 (E.D. Va. Mar. 10, 2011) (citing Fed. R. Civ. P. 12(d)). But there are exceptions to this rule, including the right to consider "official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthon v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006) (per curiam). While "the Court . . . retains discretion to disregard any extraneous exhibits submitted by Defendant and to treat the motion as a standard one for failure to

11

state a claim under Rule 12(b)," this Court looks to exhibits filed by Defendants in resolving this matter. *Harmon v. CB Squared Servs. Inc.*, No. 3:08-cv-799, 2009 WL 234982 (E.D. Va. Jan. 30, 2009) (citing *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir.2007)). Indeed, this Court may "choose among threshold grounds" to resolve this case. *Cf. Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999). Thus, this Court applies a summary judgment standard to its review of Counts II and III of the Complaint.

i. Title VII Administrative Exhaustion

Plaintiff has styled his Complaint such that Count I serves as the Petition for Review of the USPTO Director's Final Order, while Counts II and III state separate claims under Title VII. Defendants' Motions attack Counts II and III, arguing principally that Plaintiff has failed to adequately exhaust these Title VII claims prior to bringing them before this Court.

Plaintiff takes the position in his opposition that his Title VII claims arise under the Family and Medical Leave Act ("FMLA"), which imposes a two-year statute of limitations as opposed to a 45-day reporting deadline to an EEO counselor, from the time his suspension was either commenced or terminated. Dkt. 15 at 22.[4] Applying that framework, Plaintiff argues he properly filed within the appropriate time period because his suspension commenced and terminated in March of 2020 and Plaintiff filed his Complaint within two years of that date.

Prior to alleging claims under Title VII before a federal district court, a plaintiff must exhaust the required administrative remedies. *Stewart v. Iancu*, 912 F.3d 693, 698-99 (4th Cir. 2019); *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000); *see also* 29 C.F.R. §

---

[4] This Court acknowledges that Plaintiff has filed an opposition brief well in excess of the 30-page limitation outlined in Local Civil Rule 7(F). As such, this Court only considers the argument through page 30 of the brief.

1614.103 (imposing an exhaustion requirement for discrimination claims under Title VII).  "A federal employee who wishes to pursue a Title VII suit must 'initiate contact' with an EEO counselor within 45 days of the date of the allegedly discriminatory conduct or the effective date of the applicable personnel action to begin the EEO counseling process." *Figueroa-Ibarry v. Rennick*, No. 20-cv-23, 2021 WL 954843, at *4 (E.D. Va. Mar. 12, 2021) (quoting 29 C.F.R. § 1614.105(a)); *see also Guerrero v. Lynch*, 621 F. App'x 755, 756 (4th Cir. 2015).  "Failure to bring a complaint to the attention of an EEO counselor within the period required is generally fatal to bringing a discrimination suit against the federal government."  *Figueroa-Ibarry*, 2021 WL 954843, at *4 (citing *Kirkland v. Mabus*, 206 F. Supp. 3d 1073, 1080 (E.D. Va. 2016)).  The exhaustion requirement is, however, "subject to equitable modification," including the doctrine of equitable tolling when the plaintiff has shown entitlement.  *See Price v. Litton Bus. Sys., Inc.*, 694 F.2d 963, 966 n.2 (4th Cir. 1982) (applying the holding in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982)); *Figueroa-Ibarry*, 2021 WL 954843, at *4 ("Barring the application of the doctrine of equitable tolling, a plaintiff's claim is subject to dismissal when she fails to abide by the applicable filing deadlines.").

Plaintiff first sought EEO counseling on September 7, 2021.  Dkt. 19-1 at 19.  Counting 45 days back leaves the Plaintiff with timely raised Title VII claims for the period on or after July 23, 2021.  However, the Complaint only alleges violations of Title VII that preceded July 23, 2021, and therefore Plaintiff's Title VII claims are deemed untimely.  The undisputed record reveals that Plaintiff was made aware of this 45-day requirement as part of his required training as a USPTO federal employee.  Dkt. 13-1 at 78; *see also Washington v. U.S. Dep't of Def.*, 3:07-cv-482, 2008 WL 2725810, at *2 (E.D. Va. July 11, 2008) (dismissing a Title VII complaint because plaintiff had not filed her complaint within the 45-day time limit and observing that the plaintiff was well-

13

aware of the 45-day time limit as part of her EEO training).  As such, dismissal of Plaintiff's Title VII claims on summary judgment is appropriate.  *See Saunders v. Stone*, 758 F. Supp. 1143, 1145 (E.D. Va.), *aff'd*, 948 F.2d 1282 (4th Cir. 1991) (holding that "untimely administrative complaints must be rejected" and citing to numerous cases in this circuit dismissing on like grounds).

Plaintiff has also failed to make a case for equitable tolling.  Nowhere in the Complaint or in his briefing does Plaintiff assert he was unaware of the violations at the time they allegedly occurred.  Considering the dearth of evidence and the "considerable [evidentiary] burden" for imposing an equitable modification to the exhaustion requirement, this Court will not consider applying such an "extraordinary remedy."  *CVLR Performance Horses, Inc. v. Wayne*, 792 F.3d 469, 476 (4th Cir. 2015).  "Plaintiff is not entitled to equitable relief from [his] failure to timely comply with the time limit because [he] has not made a showing of affirmative misconduct on the part of the government."  *Washington*, 2008 WL 2725810, at *2.

To be sure, this Court also addresses Plaintiff's attempt to recast its Title VII claims as FMLA claims in order to pivot away from the exhaustion requirement.  It appears that Plaintiff has conflated Title VII protected activities with FMLA protected activities.  *See, e.g.*, Dkt. 1 ¶ 150. Title VII states that "[a]ll personnel actions affecting employees . . . shall be made free from any discrimination *based on race, color, religion, sex, or national origin.*"  42 U.S.C. § 2000e-16 (emphasis added).  Title VII therefore is not concerned with providing remedies for alleged violations of purported protected family leave activities unless the basis for infringing on those activities can be traced back to discrimination on the basis of race, color, religion, sex, or national origin.  *See Cooper v. Spartanburg Cty. Sch. Dist. No. 7*, 2016 WL 4491870, at *5 (D.S.C. Jun. 15, 2016) ("[T]aking FMLA leave is not protected activity under Title VII."); *Moore v. Nat'l Tire & Battery*, No. 13-cv-01779, 2013 WL 5587295, at *3 (D. Md. Oct. 9, 2013) ("However, taking

14

FMLA leave is not protected activity within the meaning of Title VII; it has nothing to do with whether an employee has a reasonable belief that the employer is violating her (or someone else's) rights under Title VII or has participated in a proceeding under Title VII.").  Plaintiff makes no such argument.

ii.  FMLA Administrative Exhaustion

Even if Plaintiff did abandon his Title VII claims and instead sought relief under the FMLA, Plaintiff has still fallen short of the requisite administrative exhaustion requirements.  At the time of the earliest alleged protected activity in the spring of 2019, Plaintiff had worked at the USPTO for over a decade.  *Compare* Dkt. 1 ¶ 43 *with id.* ¶ 40.  Title II of the FMLA applies to federal employees who have "completed at least 12 months of service as an employee [] of the Government of the United States."  5 U.S.C. § 6381(1)(B).  By contrast, Title I of the FMLA "governs private sector and federal employees with less than 12 months of service."  *Chandler v. Bernanke*, 531 F. Supp. 2d 193, 201 (D.D.C. 2008); 29 U.S.C. §§ 2611-12.  Here, Plaintiff would be subject to Title II of the FMLA after considering his tenure at the USPTO at the time of the earliest alleged protected activity.  *See Mann v. Haigh*, 120 F.3d 34, 36 (4th Cir. 1997) ("In general, most employees of the federal government to whom the FMLA applies [] are governed by Title II of the FMLA."); *see also* 29 C.F.R. § 825.109(a) (confirming that the USPTO does not all under any of the federal employee groups excepted from Title II).  Title I therefore does not apply to Plaintiff.  *See* 29 U.S.C. § 2611(2)(B)(i).  And unlike Title I's specifically enumerated private right of action, "Title II omits a similar provision creating a private right of action."  *Mann*, 120 F.3d at 36.  In other words, the USPTO enjoys sovereign immunity from any potential FMLA claim by Plaintiff.

For Plaintiff to assert a cognizable claim under Title II, he would need to present this matter before the Merit Systems Protection Board ("MSPB") in the first instance, and any further appeals would fall within the exclusive jurisdiction of the Court of Appeals for the Federal Circuit. *See McNair v. Spencer*, No. 4:17-cv-38, 2018 WL 2147515, at *5 (E.D. Va. May 3, 2018) (denying a plaintiff's Title II FMLA claim because only the MSPB and, upon appeal, the U.S. Court of Appeals for the Federal Circuit retain jurisdiction over such claims); *Wright v. Locke*, No. 1:09-cv-379, 2010 WL 11561698, at *1 (E.D. Va. Jan. 12, 2010) (dismissing FMLA claims because plaintiff had not "properly raised his FMLA claims before the MSPB").

Accordingly, there is no genuine dispute as to material fact that Plaintiff did not exhaust his Title VII claims within the legally prescribed window. Therefore, Plaintiff's Title VII claims under Counts II and III have not been properly exhausted and therefore must be dismissed on summary judgment.

### C. Petition for Review of USPTO Director's Final Order

Congress vested the USPTO with plenary authority to issue regulations "govern[ing] the recognition and conduct of agents, attorneys, or other persons representing applicants or other parties before the Office." 35 U.S.C. § 2(b)(2)(D). In the administration of the USPTO's statutory authority, the USPTO promulgated an expansive regulatory framework for the registration to practice before the USPTO. One of those regulations, which is at issue here, prohibits an individual from registering to practice before the Agency unless the OED Director is satisfied that the applicant "possesses good moral character and reputation." 37 C.F.R. § 11.7(a)(2)(i).

To meet this exacting burden, every applicant must provide "satisfactory proof of possession of good moral character and reputation," including disclosing "all relevant facts, dates and information; and provide verified copies of documents relevant to his other good moral

character and reputation." *Id.* §§ 11.7(b)(1)(iii), (g)(1).  The Agency may deny any application on lack of moral character grounds if "[a]n individual[] lack[s] of candor in disclosing facts bearing on relevant issues concerning good moral character and reputation when completing the application or any time thereafter."  *Id.* § 11.7(h)(3).  If the OED Director receives information that questions the applicant's good moral character, "the OED Director shall conduct an investigation into the good moral character and reputation of that individual."  *Id.* § 11.7(g)(2)(i). The applicant is then afforded the opportunity to reply to the OED Director's inquiry, which the OED Director must consider in making a final determination as to the applicant's moral character and reputation.  *Id.* § 11.7(j).  The applicant may then seek review of the OED Director's decision upon petition to the USPTO Director.  *Id.* § 11.2(d).  Only after the USPTO Director issues a final decision may the applicant file a petition for review before this Court, provided that the petition is filed "within 30 days" of the USPTO final decision.  *See* 35 U.S.C. § 32; 37 C.F.R. § 11.57; E.D. Va. Local Civ. R. 83.5.

Again, Plaintiff has failed to comply with the appropriate timing requirements.  The USPTO Director's Final Order, dated August 9, 2021, informed Plaintiff of his right to seek judicial review before this Court within 30 days of the date of that decision.  Dkt. 7-1 at 57-58 (citing E.D. Va. Local Civ. R. 83.5; 37 C.F.R. § 11.2(e)).  Thus, Plaintiff had until Wednesday, September 8, 2021 to file his petition for review.  While Plaintiff was served on August 11, 2021, that has no bearing on the running of the 30-day requirement.  *See, e.g.*, *Kroll v. Lee*, No. 1:16-cv-704, 2017 WL 2240674, at *4 (E.D. Va. May 22, 2017) (finding that a petition for review of a USPTO decision was untimely because petitioner filed his complaint 34 days after the date of the final order and that the petition "could be dismissed for that reason alone"); *Chaganti*, 187 F. Supp. 3d at 690 (same).  But considering Plaintiff's *pro se* status and that he has filed this action as a

complaint rather than a petition for review, this Court will extend grace and consider the merits of the petition.  *See Jinyang Guo v. Lee*, No. 1:16-cv-536, 2016 WL 9225029, at *1 n.2 (E.D. Va. Oct. 11, 2016) (proceeding to the merits of a petition given litigant's *pro se* status).

### i.  Whether the USPTO Director's Final Order was arbitrary and capricious

Plaintiff challenges the Final Order on four grounds: (1) the USPTO wrongly applied 37 C.F.R. § 11.7(h)(4)(iii)(A) in evaluating what Plaintiff argues was a violation of his due process; (2) his AWOL suspension did not constitute "dishonesty, fraud, misrepresentation, deceit, or [] any violation of Federal or State laws or regulations"; (3) the OED Director falsely questioned Plaintiff's candor in submitting his Application post-dated to May 21, 2020; and (4) the USPTO neglected to consider Plaintiff's overall performance as a USPTO employee and failed to give meaningful weight to the letters of recommendation submitted on Plaintiff's behalf.  This Court takes each argument in turn.[5]

### 1.  Application of 37 C.F.R. § 11.7(h)(4)(iii)(A)

Plaintiff submits that the USPTO Director needed to evaluate whether "such infirmity of proof establishing the misconduct [] give[s] rise to the clear conviction" that Plaintiff acted dishonestly.  Dkt. 1 ¶¶ 68-69 (citing 37 C.F.R. § 11.7(h)(4)(iii)(A)).  Instead, Plaintiff claims that the USPTO "ignored [his] arguments entirely and did not specifically respond to [his] analysis and arguments even once."  *Id.* ¶ 67.  The crux of Plaintiff's position is that the OED Director violated 37 C.F.R. § 11.7(h) in evaluating Plaintiff's good moral character and reputation because the OED Director's procedure deprived Plaintiff of due process in having the opportunity to be heard, and

---

[5]  While Local Civil Rule 83.5 states that the Court "may, in its discretion, require briefing and argument prior to making a decision on the petition," this Court never ordered briefing beyond Defendants' required response to the Petition.  This Court will nonetheless proceed as if Plaintiff were authorized to file a reply considering Plaintiff's *pro se* status.

that the OED Director's finding would result in a "grave injustice."  But as the USPTO Director rightly identified, Section 11.7(h) applies only to instances involving individuals who have been "disbarred or suspended from practice of law or other profession, or [who] ha[ve] resigned in lieu of a disciplinary proceeding . . . ."  Dkt. 7-1 at 53 (quoting 37 C.F.R. § 11.7(h)(4)(i)).  In this case, Plaintiff received a suspension related to the misrepresentation of his hours to his employer. Plaintiff did not receive a disbarment or suspension from the practice of law or patent examination before the USPTO.  The USPTO Director provided a rational basis as to why Plaintiff's defenses rang hollow.

### 2.  Plaintiff's AWOL Suspension

Next, Plaintiff argues that the USPTO Director "incorrectly impl[ied] that Plaintiff's previous charges are the moral equivalent of violent crimes."  Dkt. 1 ¶ 95.  And while Plaintiff admits that the suspension stemmed from an accusation of AWOL, "the situation surrounding Plaintiff's AWOL did not involve dishonesty, fraud, misrepresentation, deceit" or any other form of unlawfulness "but instead involved out-of-service technology, a personal situation that led to increased work computer logins, and more complicated accounting for time that otherwise would not have happened had all technology been functioning." *Id.* ¶ 104.  Above all else, Plaintiff argues that the Suspension Notice he received relies on the Telework Enhancement Act Pilot Program ("TEAPP") Work Agreement Plaintiff signed on June 11, 2019.  Because the alleged AWOL hours and minutes occurred between April 30, 2019 and June 8, 2019, Plaintiff argues that the Suspension Notice's reliance on the TEAPP Work Agreement renders the "entire support for the alleged AWOL invalid."  Dkt. 15 at 26.

A review of the Administrative Record reveals that the decision to suspend Plaintiff was the result of a detailed assessment of Plaintiff's activity working remotely using USPTO

technology.  *See* Dkt. 8-2 at 19-20.  Ultimately, the USPTO supervisor flagged that Plaintiff had claimed eight hours on his WebTA time log but showed idle periods upwards of almost five hours at a time on his laptop.  *Id.* at 20.  Nothing in the Suspension Notice indicates that Plaintiff would *not* have been disciplined if he had *not* signed the TEAPP Work Agreement.  That agreement simply imposed a new requirement that Plaintiff remain logged into the USPTO network "at the beginning and end of any period of time" for which work is claimed.  *Id.* at 19.  Indeed, the USPTO supervisor explicitly acknowledged that "many employees temporarily engage in activities resulting in the employee being displayed as not badged-in and/or not logged-in;" going so far as to credit a number of Plaintiff's time lapses as time worked despite no evidence that Plaintiff was actually working.  *Id.* at 20.

Considering the USPTO supervisor conducted an extensive review of Plaintiff's "WebTA records, Universal Laptop records, building access [] records, VPN records, work reports [], and Phone and WebEx logs," the USPTO Director's reliance on these findings is well-founded.  *Id.* at 19.  The inference that Plaintiff's periods of extensive inactivity could act as indicia of Plaintiff being AWOL is, at minimum, plausible.  Taking the presumption in favor of the Agency, as this Court must, the USPTO Director's reliance on the USPTO supervisor's review of Plaintiff's work activity forms a rational basis for the determination that Plaintiff's representation of his AWOL exhibited dishonesty and misrepresentation.  *See Cornish*, 715 F. Supp. 2d at 63; *Manufactured Hous. Inst.*, 467 F.3d at 398.  Plaintiff has not shown that the USPTO Director's Final Order was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *Bender*, 490 F.3d at 1365-66 (quoting 5 U.S.C. § 706).

Plaintiff's disavowal of any misrepresentation or dishonest timekeeping practice requires this Court to rely on unsubstantiated evidence.  Rather, this Court defers to the USPTO Director's

findings, which are consistent with past Agency determinations.  *See, e.g.*, Dkt. 10-1 at 15; *see also In re Manghera*, Disciplinary Proceeding No. D2009-43 (USPTO June 10, 2010) (upholding a 24-month suspension for submitting timesheets falsely claiming time not actually worked even when not compensated directly for those hours); *In re [Redacted]*, Moral_19, Decision on Petition Under 37 C.F.R. § 11.2(d) (USPTO Aug. 7, 2009) (finding an applicant to have "perpetuated the initial misrepresentation of being at work" after claiming to have worked certain hours and received pay for those hours he had not actually worked); *In re [Redacted]*, Moral_08, Decision on Petition Under 37 C.F.R. § 11.2(d) (USPTO Sept. 26, 2007) ("The OED Director correctly found that it is appropriate to deny registration to a person . . . who repeatedly engages in conduct involving dishonesty and deceit[.]").

### 3. The OED Director's Determination as to Plaintiff's Candor

Plaintiff further seeks review of the OED Director's conclusion that he lacked candor when he post-dated his Application for the date of his resignation rather than the date he actually submitted the Application to the USPTO.  Dkt. 1 ¶¶ 98-101.  Yet the USPTO Director's Final Order did not rely on the OED Director's determination regarding the date listed on Plaintiff's Application and the attendant conclusion to be drawn as to Plaintiff's candor.  This Court may only provide judicial review over elements of the Agency's final decision.  *SEC v. Chenery*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").  Because the OED Director's analysis of the Application date does not undergird the USPTO's Final Order, this Court has no jurisdiction to exercise its judicial review on this issue.

### 4. Consideration of Plaintiff's Past Work Performance and Letters of Recommendation

Plaintiff avers that the USPTO discounted each of his responses to the OED Director for additional information regarding his suspension and applied no "weight to the excellent work [Plaintiff] had achieved as a Patent Examiner."  Dkt. 1 ¶¶ 111, 116.  Nor did the USPTO Director afford the proper weight to Plaintiff's four letters of recommendation, according to Plaintiff.  *Id.* ¶ 120.

The USPTO Director's Final Order turns squarely on the determination that the OED Director's Final Decision "did not call into question [Plaintiff's] work history or academic background."  Dkt. 7-1 at 56; Dkt. 7-3 at 18-20, 23-24.  "Rather, it specifically identified the suspension and [Plaintiff's] nondisclosure of that suspension as the basis for denying his Application."  *Id.*  Non-reliance on work performance in evaluating an applicant's "possession of honesty[,] truthfulness, trustworthiness and reliability" strikes this Court as entirely sensible.  *See* 37 C.F.R. § 11.7 (defining "good moral character and reputation").  One could be the most prodigious patent examiner in the history of the USPTO and yet still suffer from questionable rectitude.  The two concepts are entirely divergent.  The same can be said for letters of recommendation which say nothing about Plaintiff's suspension or, more importantly, any "change in attitude" indicative of Plaintiff's rehabilitation.  Dkt. 7-1 at 56 (quoting 37 C.F.R. § 11.7(i)).  Of course, Plaintiff's unambiguous position remains that he committed no wrongs at any time.  But without extensive documentary evidence to support that view, this Court must give due deference to the Agency's contrary findings—which come as a result of having conducted a scrupulous and extensive investigation into Plaintiff's self-reporting work record.

Upon a rational review of the OED Director's findings, the USPTO Director affirmed.  Seeing no evidence that the USPTO Director's affirmance came at the cost of an arbitrary or

capricious review or application of the record, this Court is without reason to dispute the Final Order.

### IV.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss (Dkt. 11) and Motion for Summary Judgment (Dkt. 12) are GRANTED; and it is

FURTHER ORDERED that Plaintiff's Petition for Review and Complaint (Dkt. 1) are DISMISSED.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Memorandum Opinion and Order.  A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal.  Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

It is SO ORDERED.

Alexandria, Virginia
April 26, 2022

/s/

Rossie D. Alston, Jr.
United States District Judge